**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

GREGORY CONNERS,

  *Plaintiff,*

v.

ENVIRONMENTAL OPERATIONS,
INC.

  *Defendant.*

)
)
)
)
)
)
)
)
)
)
)
)

No. 4:23-cv-01096-JMD

## <u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTS III, IV, AND V</u>

Plaintiff Gregory Conners' counts III, IV, and V cannot survive Defendant Environmental Operations' motion for summary judgment.  Conners asserts that the company improperly docked his pay for several days in November 2022 after he was absent from work.  He asserts that this decision terminated his status as a salaried employee exempt from overtime pay requirements and thus obligated the company to pay overtime for future pay periods under both (1) the Fair Labor Standards Act and (2) Missouri and Illinois employment laws that have been interpreted similarly to federal law.  ECF 1 at 9–13.

But Conners remained a salaried employee not eligible for overtime pay during and after November 2022.  To shed salaried status and become eligible for overtime pay under the Act and state-law counterparts, an employee must establish that the employer has an "actual practice" of making salary "deductions" from "employees."  29 C.F.R. § 541.603(a).  Courts interpret this regulation to require habitual, repeated deductions, so courts assess the number of deductions made and employees affected, as well as the duration of the deductions, when evaluating whether an "actual practice" exists.  *Id.*  The parties dispute the reason the

company docked Conners' pay for several days in November 2022.[1]    But even crediting Conners' side of the story about those deductions, the isolated reduction of pay for one employee for a few days did not transform Conners from a salaried employee to an employee eligible for overtime pay under § 541.603(a).   As court after court has ruled, salaried employees become eligible for overtime under that regulation only when improper deductions are much more widespread than three deductions affecting a single employee.   The Court **GRANTS** Environmental Operations' motion for summary judgment.   That motion is limited to Conners' counts III, IV, and V.

## Background

Environmental Operations promoted Conners to plant manager—a salaried role exempt from overtime-pay requirements—in January 2021.[2]   ECF 41 at 2.   Conners took charge of safety, plant operations, and compliance.   *Id.* at 4.   From January 12, 2021, through October 29, 2022, the company paid Conners his applicable salary at a rate of 40 hours per

---

[1] It is undisputed that Conners was completely absent from work for several days in November 2022.  ECF 41 at 9.  Conners asserts that the company's stated reason for docking his pay for several days—Conners' undisputed absenteeism—is a pretext and that the company really wanted to recoup pay for military leave from the year before.  *See* ECF 40-1 at 72:19, 66:21.  Conners provides no independent evidence of this assertion outside his deposition testimony.  The Court "is not required to accept unreasonable inferences or sheer speculation of fact."   *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 791 (8th Cir. 2009) (internal citation omitted); *see also Davenport v. Riverview Gardens School Dist.*, 30 F.3d 940, 945 (8th Cir. 1994) (A plaintiff's "own unsubstantiated allegations in deposition" along with a "failure to adduce any independent evidence" permits a district court to conclude that "there is no genuine issue of fact.").  The Court need not determine whether Conners' assertion of pretext is unsubstantiated speculation because his position fails as a matter of law under either scenario.

[2] Salaried-exempt administrative employees are employees (1) "[c]ompensated on a salary . . . basis at not less than" $684 per week; (2) "[w]hose primary duty is the performance of . . . non-manual work directly related to the management or general business operations of the employer"; and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."   29 C.F.R. §§ 541.200–201, 541.600.  Conners' role met the Act's requirements.  *See* ECF 41 at 3–4.

2

week, regardless of whether Conners worked more or less than 40 hours. *Id.* at 5.  Conners admits that he was a salaried employee up to November 2022 without "any expectation that he would be getting paid overtime." *Id.* at 4–5.

Environmental Operations made several deductions from Conners' pay in November 2022. *Id.*  First, the company docked eight hours from the pay period ending November 5 after Conners took a "personal day" because "his wife was not feeling well." *Id.* at 8–9.  The company justified its initial deduction as a way to "handle [Conners'] excessive absenteeism." *Id.* at 7.  Second, for the following pay period ending November 12, Conners was paid for 24 hours despite being absent the entire week.[3] *Id.* at 9.  Third, Environmental Operations paid Conners for 31.5 hours for the November 19 pay period after he worked only three days that week and listed "sick/personal" as the cause of his absence. *Id.* at 11.  In short, while Conners believes he was entitled to salaried pay for 40 hours each week, the company paid hourly instead and paid him for *more* than the number of hours he worked in those weeks.

According to the company's chief financial officer, Conners' supervisor "wanted to . . . dock him . . . because he's out of vacation, he's out of sick, he's out of personal days, and he's not showing up for work." ECF 44-7 at 22–23.  Contemporaneous payroll documents uniformly indicate that Conners exhausted the entirety of his annual vacation by September 18 and all but one hour of his sick leave by October 16—several weeks before Conners'

---

[3] Conners was absent Monday, Tuesday, and Wednesday for personal reasons.  ECF 41 at 10.  He was also not present at work on Thursday and Friday because of scheduled military leave.  The company paid two days at the salary rate for Conners' military leave. *Id.* at 10.  The company also paid him for an additional eight regular hours "relating to the 'last week'" despite Conners' full-day absence on the previous Monday, November 7. *Id.*

November absences.[4]  *See* ECF 44-4 (2022 "Sick/Vacation History" Tracker); ECF 44-5 (Absence Tracker).  Against these records, Conners asserts that the company "artificially reduced" his 2022 paid leave to "tak[e] back" military leave he used in 2021.  ECF 40-1 at 72:19, 66:21.  Conners adds that his supervisor "accused" him of "stealing" six weeks of military pay and reduced his salary to "recoup[]" a portion of that time.  *Id.* at 67:24–68:2; 70:11–12.

Although Environmental Operations' employee handbook permits deductions for improper absences, the company's chief financial officer barred the company from making future paycheck deductions from Conners' salary.[5]  ECF 41 at 6, 11.  The company then paid Conners for exactly 40 hours of work per week during all pay periods—excluding one exception later cured—until Conners' April 2023 termination.[6]  *Id.* at 12.  Conners worked as plant manager for about 116 weeks.  *Id.*

Conners believes that when the company docked his pay for several weeks in November, that transformed Conners' status from a salaried employee not entitled to overtime pay to an hourly employee who is entitled to overtime pay.  ECF 42 at 1.  Counts

---

[4] Several emails state that Conners had two weeks (80 hours) of vacation leave for the 2022 year.  Upon his promotion in January 2021, an email from the company's operations manager said that Conners was "moving over to salary" and therefore "eligible for all [company] benefits + 2 weeks vacation."  ECF 44-2.  Another email said the company increased Conners' "vacation time" from "80 hours to 120 hours beginning 1/1/2023."  ECF 44-3.  Conners received 4 days (32 hours) of sick leave.  ECF 44-4.

[5] The company's employee handbook prohibits improper deductions, but permits salary withholding for cause due to "[a]bsence from work for one or more full days for personal reasons other than a qualifying and approved vacation/personal day, sickness, or disability" and "[a]bsence from work for one or more full days due to sickness or disability if the deduction is made in accordance with a bona fide plan, policy, or practice of providing compensation for salary lost due to illness."  ECF 41 at 6.

[6] Conners received a paycheck on April 18, 2023, that erroneously listed only 28 hours of work.  ECF 41 at 12.  But the company issued a paycheck the following week for 52 hours of work, making up for the 12 hours omitted.  *Id.*

4

III, IV, and V thus assert claims for overtime pay from November 2022 until Conners' April 2023 termination. *Id.* at 1, 4. The company moved for summary judgment on these counts but not on other, unrelated counts.

## Standard of Review

The Court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the Court "view[s] the facts and inferences in the light most favorable to the [nonmovant]," that party nonetheless retains an "obligation to come forward with specific facts showing that there is a genuine issue for trial." *Dahl v. Rice Cnty, Minn.*, 621 F.3d 740, 743 (8th Cir. 2010); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872–73 (8th Cir. 2005) (A nonmovant "may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor.").

## Fair Labor Standards Act

Under the Act's default rule, if a company wants to maintain its exemption from paying an employee overtime, the company must pay "a predetermined amount" each pay period "not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a).[7] Conners contends that the November 2022 pay

---

[7] There are many exceptions to this "[g]eneral rule." 29 C.F.R. § 541.602(a). "Exceptions" include deductions made (1) "when an exempt employee is absent from work . . . for personal reasons," and (2) "for absences . . . occasioned by sickness or disability . . . if the deduction is made in accordance with a bona fide plan, policy, or practice of providing compensation for loss of salary occasioned by such sickness or disability . . . after the employee has exhausted the leave allowance thereunder." § 541.602(b).

reductions "destroyed [his] exempt status," ECF 42 at 4, but "not all [allegedly] improper salary deductions result in the loss of the [Act's] exemption," *Rebischke v. Tile Shop, LLC*, 229 F. Supp. 3d 840, 849 (D. Minn. 2017) (citing 29 C.F.R. § 541.603).  Instead, federal regulations state that an employer "who makes improper deductions from salary shall lose the exemption" where the employer has an "actual practice of making improper deductions"— that is, when "the facts demonstrate that the employer did not intend to pay employees on a salary basis."  29 C.F.R. § 541.603(a).

Conners' claim fails because he has presented evidence at most of isolated improper deductions affecting only him for a period of less than one month.  Federal regulations require more.  They require systemic or widespread deductions in pay.  As the Tenth Circuit has explained, the relevant regulations speak in the "plural" rather than the singular ("deductions" and "employees"); they require an "actual practice"—that is, "habitual[ ]" or "repeated" conduct.  *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1196 (10th Cir. 2015) (finding it "implausible that subsection (a)'s requirement of a practice of such deductions contemplates isolated conduct") (emphasis and citations omitted).  The regulations further establish that an employer has a "practice" of improper deductions only if it is fairly widespread.  To determine whether "the employer did not intend to pay employees on a salary basis," federal regulations require courts to consider, among other things, (1) "the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline;" (2) "the time period" of occurrences; and (3) "the number . . . of employees whose salary was improperly reduced."  29 C.F.R. § 541.603(a).

In some cases, the question whether an employer's conduct is sufficiently widespread to amount to an "actual practice" might be a question left for the jury.  But here the

6

employer's conduct plainly falls on one side of the legal line.  Environmental Operations' pay reductions do not rise to an "actual practice" under these regulations.  The company docked Conners' salary for only three pay periods, all in the same month.  *See* ECF 42 at 4.  The deductions occurred over a few weeks and amounted to a small fraction of Conners' 116-week tenure as plant manager.  *Id.*; ECF 41 at 12.  They also affected just one employee.  *See*, *e.g.*, ECF 42 at 2.  These limited, isolated deductions from Conners' pay did not constitute an "actual practice" (that is, a repeated habit) of improper "deductions" (plural) from "employees" (plural) that would revoke the salary status not just of Conners but also every other employee "in the same job classification working for the same managers" as Conners.  § 541.603(b).

The single substantive cases Conners cites in his motion opposing summary judgment undermines his argument.  He cites *Silloway v. City and Cnty. of San Francisco*, 117 F.4th 1070 (9th Cir. 2024).  But in that overtime dispute, dozens of nurses alleged sustained pay reductions across dozens of pay periods over at least four years.  *Silloway*, 117 F.4th at 1072, 1078, 1082.  The court held that the employer's "compensation system [did] not necessarily flunk the salary basis test," but rejected the employer's motion for summary judgment because the facts "could support a finding" of an actual practice.  *Id.* at 1072, 1084.  *Silloway*, in which dozens of employees alleged dozens of pay reductions over nearly half a decade, is far from this case, which involves three allegedly improper deductions in the same month from one employee's salary.

Many other cases also undermine Conners' position, and he makes no effort to address these precedents.  *See Rebischke*, 229 F.Supp.3d at 845 (D. Minn. 2017) (determining that 22 deductions from 16 store managers over three years did not constitute an actual practice); *Aiken v. City of Memphis, Tenn.*, 190 F.3d 753, 762 (6th Cir. 1999) ("The evidence shows that

only one [plaintiff-employee] ever faced a deduction in pay.   Thus, plaintiffs cannot demonstrate an actual practice . . . ."); *see also Smith v. Pepper Source, Ltd.*, 5:12-cv-05027, 2013 WL 2250305, at \*4 (W.D. Ark. May 22, 2013) ("Even assuming that all nine deductions alleged by [the plaintiff-employees] were improper, . . . the Court finds that nine deductions for three employees over the course of their [multi-year] employment . . . cannot establish a pattern or practice to show that [they] were, in fact, treated as hourly employees."); *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1196 (10th Cir. 2015) ("[A]s a matter of law, [the plaintiff-employee's] failure to identify more than [one] deduction precluded a finding of an 'actual practice,' 29 C.F.R. § 541.603(a), by the Company . . . ."); *Cash v. Cycle Craft Co., Inc.*, 508 F.3d 680, 684 (1st Cir. 2007) ("[T]wo aberrant paychecks out of the approximately 50 that [the plaintiff-employee] received do not amount to an actual practice." (internal citation omitted)); *DiGiore v. Ryan*, 172 F.3d 454, 464–65 (7th Cir. 1999) (concluding that five improper deductions over approximately three years did not show an actual practice); *Carpenter v. City & Cnty. Of Denver, Colo.*, 115 F.3d 765, 767 (10th Cir. 1997) (holding that two allegedly improper deductions under isolated circumstances did not show an actual practice); *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 522 (S.D.N.Y. 2013) ("[T]hree suspensions among five employees over a period of four years is . . . too isolated an occurrence to suggested Defendants had an actual practice of making unlawful deductions from [the plaintiff-employees'] salaries." (internal citation omitted)).

Against all this, Conners relies on the safe-harbor provision in the federal regulations. He asserts that, "[t]o retain the employee's nonexempt status," the employer must show (1) that the improper deductions were "isolated or inadvertent" and (2) that the employee was "reimburse[d]."   ECF 42 at 3 (referring to 29 C.F.R. § 541.603(c)).   That argument misreads

the provision, which states only that reimbursement is sufficient (but not necessary) to maintain an employees' status as exempt:

> "Improper deductions that are either isolated or inadvertent will not result in loss of the exemption for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions."

29 C.F.R. § 541.603(c). This section merely establishes one way for employers to fix isolated or inadvertent payment mistakes to avoid any doubt about whether a company has an "actual practice" of deductions. *See*, *e.g.*, *Rebischke*, 229 F.Supp.3d at 853 ("[T]he Court holds that although the actual practice provision and window of correction are closely related, the window of correction is an independent basis by which the [Act's] exemption may be preserved . . . ."). This provision does not overcome the many other provisions in the regulation requiring something more widespread than a few deductions against a single employee. As Environmental Operations correctly notes, "it is not accurate to say that an employer *must* reimburse an employee in order to avoid a loss of exemption." ECF 43 at 6.

Conners cannot prevail on this claim. Environmental Operations did not engage in an "actual practice"—that is, habitual or repeated actions—of making improper deductions. For this reason, his arguments fall short regardless of the company's motive for the deductions.[8] *See Anderson*, 477 U.S. at 248 (noting that only factual disputes "that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment"). Count III fails.

---

[8] Conners' claim is also suspect on an alternate ground. Conners alleges that his supervisor "told [him] that the deduction[s] were made to account for [Conners' use of] military leave . . . the year before." ECF 42 at 2. But "courts agree . . . that the improper acts of a few rogue managers, even when intentional, are not evidence that an employer has an actual practice of violating [the Act]." *Rebischke*, 229 F.Supp.3d at 859.

9

### State Employment Laws

Counts IV and V—based on Missouri and Illinois state employment laws—also fail. Courts interpret the overtime laws of both States in line with federal law. *See* Mo. Rev. Stat. § 290.505.4 (2008) ("[T]his section shall be incorporated in accordance with the Fair Labor Standards Act . . . and any regulations promulgated thereunder."); *LaCurtis v. Express Med. Transporters, Inc.*, 856 F.3d 571, 574 (8th Cir. 2017) ("[T]he Missouri Minimum Wage Law . . . is interpreted in accordance with the [Fair Labor Standards Act]."); 820 I.L.C.S. 105/4a(2)(E) (2016) (making a violation of the Illinois Minimum Wage Law contingent on establishing a violation under the Fair Labor Standards Act); *Divine v. Volunteers of Am. of Ill.*, 319 F.Supp.3d 994, 999 n.1 (N.D. Ill. 2018) ("[B]ecause the [Illinois Minimum Wage Law] parallels the [Fair Labor Standards Act], courts generally use the same analysis to decide [such] claims."); *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 376 (7th Cir. 2005) ("Since the plaintiffs' [Fair Labor Standards Act] claims fail, their related state law claims under [the Illinois Minimum Wage Law] must fail as well."). Because Conners' count III falls, so too do counts IV and V.

Conners has likewise waived any argument for separate interpretations of his federal and state claims. Even though "failure to oppose a basis for summary judgment constitutes waiver of that argument," he offered no substantive response to Environmental Operations' arguments against his state-law counts. *Sprafka v. Med. Device Bus. Servs., Inc.*, 139 F.4th 656, 662 (8th Cir. 2025) (internal citation omitted). Critically, he never contests the company's invitation for the Court to interpret the state laws in line with federal law. The Court deems any argument here waived and declines to embark on a fishing expedition. Counts IV and V both sink along with count III.

10

**Conclusion**

After reviewing the evidence and drawing all inferences in the light most favorable to Conners, the Court finds no genuine issues of material fact remain. The undisputed facts require the Court to grant summary judgment to Environmental Operations on Conners' three overtime compensation counts. **IT IS HEREBY ORDERED** that Environmental Operations' motion for summary judgment on counts III, IV, and V, ECF 38, is **GRANTED**.

Dated this 24th day of October, 2025.

JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE